(No. 21513.—)

OSCAR NELSON, Auditor of Public Accounts, *vs.* THE JOHN B. COLEGROVE & Co. STATE BANK *et al.*—(THE MILLIKIN NATIONAL BANK *et al.* Plaintiffs in Error, *vs.* ROBERT G. EARLY, Receiver, Defendant in Error.)

*Opinion filed December 23, 1932—Rehearing denied Feb. 8, 1933.*

McMILLAN, McMILLAN & GARMAN, and HOGAN & COALE, for plaintiffs in error.

OSCAR J. PUTTING, for defendant in error.

Mr. JUSTICE JONES delivered the opinion of the court:

In the early part of 1928 the John B. Colegrove & Co. State Bank of Taylorville (hereafter called the bank) was directed by the Auditor of Public Accounts to reduce its real estate loans and holdings. A plan was agreed upon between the bank and certain directors whereby individual directors would nominally take over the real estate loans and holdings sought to be cleared from the bank. Pursuant to this arrangement Jesse L. Patterson, a director, took over certain land of G. W. Minnis, a bankrupt. This land was sold by the trustee in bankruptcy direct to Patterson for $45,045, the amount due the bank from Minnis

plus interest and costs. The method of settlement with the trustee in bankruptcy is not shown by the record, but it is clear that Patterson parted with nothing of value for his deed and that the entire transaction was for the benefit of the bank. Shortly after Patterson acquired title to the land he obtained a loan of $19,000 from the Illinois Joint Stock Land Bank of Monticello, Illinois, which he secured by a mortgage upon the land. The proceeds of the loan were turned over to the bank. The record does not disclose what the bank received, if anything, to make up the difference between the Minnis account of $45,045 and the $19,000 obtained from the Illinois Joint Stock Land Bank. Nearly fifteen months later Patterson executed and delivered to the bank five promissory notes, aggregating $26,045, which is the exact amount of that difference. He gave the bank a deed to the land soon after he received his deed from the trustee in bankruptcy. The bank became insolvent and closed its doors October 10, 1929. Patterson then learned that all but one of his five notes had been assigned. The First National Bank of Chicago had become the owner and holder of one note for $5500 and another for $5000. The Millikin National Bank of Decatur had become the owner and holder of one for $5000, and Josiah Hall had become the owner and holder of another for $5000. The receiver of the bank found the deed from Patterson to the bank and caused it to be recorded. By virtue of an order of court the receiver sold the land, and after satisfying the indebtedness to the Illinois Joint Stock Land Bank he had a remainder of $4049.43. The First National Bank of Chicago and the Millikin National Bank of Decatur filed their separate intervening petitions asking that they be decreed to be entitled to said remainder as their interests appear. The circuit court entered a decree in accordance with the prayer of the petitions. An appeal was taken by the receiver to the Appellate Court and the decree of the circuit court was reversed. The Mil-

likin National Bank and the First National Bank bring the cause here on *certiorari*.

The plaintiffs in error contend that Patterson was only the nominal title holder and that his participation in the transaction was merely to help the bank carry out the directions of the Auditor of Public Accounts. It was sought to prove this contention by a copy of a resolution claimed to have been adopted by the board of directors of the bank prior to the time Patterson bid in the land at the trustee's sale. The resolution recited that it was necessary for the bank to take title to the Minnis farm either in its own name or in the name of some person selected by the board of directors of the bank; that the bank had elected to have the premises deeded to Patterson as a matter of convenience; that in financing the proposition it had become necessary for Patterson to execute certain notes; that said notes had been executed under the name of "Jesse L. Patterson" to distinguish them from other notes made by him under the name of "J. L. Patterson;" that Patterson had taken title to the Minnis land and had in turn delivered a deed for the same land to the bank, which should be considered as a delivered deed but should not be placed of record until all of the notes executed by Patterson in said behalf had been canceled and returned to him; that the notes executed in connection with the Minnis land, or any renewals thereof, should not be considered as personal obligations of Patterson, and that he should be deemed only the nominal record owner of the land. Patterson testified that the resolution was duly adopted at a regular meeting of the board of directors and that at a subsequent meeting he heard the cashier of the bank read the minutes containing the resolution. No witness denied that the resolution was adopted, but the receiver of the bank produced the minute record of the board of directors and testified that it did not contain any such resolution. The court admitted the copy of the resolution in evidence over objection.

The decree of the circuit court was based on a finding that in equity the bank held the land in trust as security for the notes sold to the plaintiffs in error, but the briefs of the plaintiffs in error rely rather upon a lien resulting from an alleged indebtedness of the bank, and it is their claim that the bank held title to the land as security for the notes given by Patterson, and that an assignment of the notes to the plaintiffs in error carried with it an assignment of all security. The trouble with this contention is that it is out of harmony with the facts in the case. There is no evidence in the record even tending to show that the Minnis transaction created the relation of debtor and creditor between the bank and Patterson. The above mentioned resolution expressly recited that the notes should not be considered a personal obligation against the maker. He owed the bank nothing and the bank owed him nothing on account of that transaction, consequently there could have been no lien on the land to secure the payment of a debt. The notes were not given until fifteen months after Patterson acquired title to the land and had conveyed it to the bank. The agreement between him and the bank contemplated his giving notes for the convenience of the bank in complying with the directions of the Auditor of Public Accounts, but the notes here involved were not given for many months after the Minnis real estate loan had been closed and was no longer on the books of the bank. So far as the existence of a lien is concerned, it would have made no difference even if the notes had been executed and delivered when Patterson received his deed, because it was never the intention of the original parties that Patterson should give security for his notes. The land belonged to the bank, and it held Patterson's notes merely as a means of assisting it to pass the inspection of the bank examiner. We can see no theory upon which the plaintiffs in error are entitled to a lien upon the land or upon the net proceeds arising from its sale. The circumstances of the transaction

do not support the finding that the bank held the land in trust as security for the notes, nor do they support the contention of the plaintiffs in error that there was a lien on the land to secure the payment of the notes. There is no reason why the net proceeds of the sale of the land should be paid to the plaintiffs in error in preference to other creditors.

The judgment of the Appellate Court is therefore affirmed.

*Judgment affirmed.*